## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 25-CV-21090-RAR

**SALVATORE J. RAFFONE**,

 Plaintiff,

v.

**RONNIE QUINN**, *et al.*,

 Defendants.

_____/

### <u>ORDER TO AMEND</u>

**THIS CAUSE** comes before the Court upon *sua sponte* review of the record.  On October 2, 2024, Plaintiff Salvatore J. Raffone filed a *pro se* Complaint Under the Civil Rights Act, 42 U.S.C. § 1983, [ECF No. 1], in the United States District Court for the Northern District of Florida. A court in that District ordered Plaintiff to file an amended complaint curing various deficiencies, along with a motion for leave to proceed *in forma pauperis*.  *See* Order, [ECF No. 4].  Plaintiff filed a First Amended Complaint ("FAC"), asserting that correctional officials at Dade Correctional Institution ("Dade C.I.") in Miami, Florida, were deliberately indifferent to Plaintiff's safety and medical needs under the Eighth Amendment and deprived him of due process.  *See generally* FAC, [ECF No. 7].

In a Report, United States Magistrate Judge Martin A. Fitzpatrick recommended dismissal of Plaintiff's official capacity claims and individual capacity claim against Defendant Ricky Dixon, the Secretary of the Florida Department of Corrections.  *See* Report, [ECF No. 13], at 5. As for Plaintiff's individual capacity claims against the remaining Defendants, Magistrate Judge Fitzpatrick determined that venue "is appropriate in the Southern District of Florida because the

remaining Defendants reside there[,] and Plaintiff's claims took place there." *Id.* at 6.  He also expressed that this Court is "in the best position to determine if Plaintiff's remaining claims survive under 28 U.S.C. §§ 1915A and 1915(e)." *Id.*  United States District Judge Kent Wetherell II adopted that Report and ordered transfer to this District. *See* Order, [ECF No. 21].

After thoughtful review, and for the reasons set forth below, the Court concludes that Plaintiff has failed to state a claim upon which relief can be granted.  Rather than dismiss this action, the Court will provide Plaintiff one final chance to improve his allegations in a second amended complaint.

## **BACKGROUND**

Plaintiff purports to bring his claims under 42 U.S.C. § 1983. *See* FAC at 7.  His factual allegations are as follows.  On January 24, 2022, Plaintiff was confined to a "general population dormitory" at Dade C.I. with "limited population privileges" stemming from a COVID-19 outbreak among inmates on the other side of the dorm. *Id.* at 8–9.  Plaintiff desired to order items from the canteen and requested the requisite form from Defendant Britney Lee, a supposedly untrained employee. *See id.* at 9.  Lee "responded by ranting against" Plaintiff. *Id.*  To "avoid argument," Plaintiff retreated and proceeded to use the restroom. Defendant Lee continued disparaging Plaintiff "in the presence of 72 inmates," complaining about how Plaintiff "had disrespected her," and she insured "that no one would be allowed to purchase any canteen items." *Id.* at 9–10.

In Plaintiff's view, Defendant Lee's comments "incited" the onlooking inmates, who subsequently "blamed" Plaintiff for their loss of canteen privileges. *Id.* at 10.  One inmate, Sylvester Bush, assaulted Plaintiff while he was using the restroom, striking Plaintiff multiple times "on the top of his head with a combination-lock-in-a-sock[.]" *Id.*  Plaintiff was "left nearly

unconscious[.]" *Id.*  Plaintiff then searched for Defendant Sergeant Tatiana Thomas, who, upon seeing Plaintiff "bleeding profusely from his head," began questioning Plaintiff about what transpired between him and Defendant Lee.  *Id.* at 10–11.  Plaintiff soon declared a "medical emergency," and Defendant Thomas escorted Plaintiff to medical and left him in the care of a nurse.  *Id.* at 11.  The nurse "immediately cleaned" Plaintiff's wound, "put several sutures in his scalp," and provided Plaintiff with "an ice pack for the swelling of his cheek and eye" along with pain medication.  *Id.*

After Plaintiff received medical treatment, Plaintiff arrived at Defendant Captain Keisha Johnson's office and "signed a complaint against . . . inmate Sylvester Bush," who was later identified and faced "disciplinary confinement for his assault" on Plaintiff.  *Id.* at 12.  Johnson then directed Plaintiff's placement in protective custody.  *See id.*  While in protective custody, Plaintiff was given "a blanket, mattress and pillow."  *Id.* at 23.  Plaintiff was not provided with his personal property, additional bedding, or forms to submit administrative grievances.  *See id.* at 12.  After five days, Plaintiff "was provided with four religious books, four canteen items, a folder of college lessons, soap, radio and headphones, [and an] address book."  *Id.* at 24.

At one point, Plaintiff "was escorted out of his cell to be brought before the Institution Classification Team," which consisted of Defendant Assistant Warden Mario Corrales and other correctional officers.  *Id.* at 25.  Plaintiff asked for his personal property and grievance forms; however, while Plaintiff's request was "verbally granted," he never received the requested materials.  *Id.*  He spent twenty-two days in protective custody with a change of clothes until he was released.  *See id.* at 12–13.  Thereafter, Plaintiff "submitted a first-level grievance regarding his condition of confinement and treatment for [his] assault," but the grievance was "returned without action" as untimely.  *Id.* at 13.

## LEGAL STANDARDS

The Court "*shall* review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A (emphasis added). The definition of a "prisoner" includes "any person incarcerated or detained in any facility who is . . . accused of [or] convicted of . . . violations of criminal law." *Id.* § 1915A(c). In conducting its screening of a prisoner's complaint, the Court must "dismiss the complaint[] or any portion of the complaint," when it is (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted[;]" or (2) "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b). Similarly, if a plaintiff wishes to proceed *in forma pauperis* rather than prepaying the filing fee, § 1915(e)(2) requires the court to "dismiss [a] case *at any time* if the court determines that . . . the action" fails for the same enumerated reasons articulated under § 1915A. *Id.* § 1915(e)(2)(B) (emphasis added).

To state a claim upon which relief may be granted, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

Although the Court must hold the allegations in a *pro se* civil rights complaint "to a less stringent standard than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), *pro se* litigants are still required to comply with the Federal Rules of Civil Procedure and

the Local Rules of the Southern District of Florida, *see Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("[A *pro se* litigant] is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure."); *see also* S.D. FLA. L.R. 1.1 (explaining the Local Rules apply in all proceedings unless otherwise indicated and that the word "counsel" shall apply to a party that is proceeding *pro se*). The Federal Rules of Civil Procedure require, in pertinent part, that a pleading that states a claim for relief contain "a short and plain statement of the grounds for a court's jurisdiction," "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought[.]" FED. R. CIV. P. 8(a). "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances[,]" and "each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense." *Id.* 10(b).

Pro se litigants should ordinarily be afforded an opportunity to amend. *See Mederos v. United States*, 218 F.3d 1252, 1254 (11th Cir. 2000). However, failure to adhere to procedural rules or court orders, of course, provides grounds for dismissal. *See Equity Lifestyle Props, Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1240–41 (11th Cir. 2009) (explaining that dismissal of the action may be severe but warranted when the grounds for dismissal were previously notified). Indeed, *pro se* litigants are not exempt from procedural rules. *See McLeod v. Sec'y, Fla. Dep't of Corr.*, 679 F. App'x 840, 843 (11th Cir. 2017). Further, pleadings must be verified—which is to say, signed and dated under penalty of perjury—pursuant to Local Rule 88.2. Lying under oath, either live or "on paper," can subject plaintiffs to future criminal prosecution for giving a false statement. *See generally United States v. Roberts*, 308 F.3d 1147, 1155 (11th Cir. 2002) (showing a defendant who falsely subscribed to statements in a habeas petition resulted in a perjury prosecution).

## ANALYSIS

Following the Northern District's partial screening of the FAC, what remains are Plaintiff's claims against five Defendants in their individual capacities—Warden Ronnie Quinn, Assistant Warden Mario Corrales, Britney Lee, Sergeant Tatiana Thomas, and Captain Keisha Johnson—for violations of the Eighth Amendment's Cruel and Unusual Punishments Clause. Plaintiff also alleges the denial of his Fourteenth Amendment due process rights against Defendants Quinn, Corrales, and Johnson. As explained below, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted.

### I.  Plaintiff's Eighth Amendment Claims

Plaintiff advances several theories of liability under the Eighth Amendment, including unlawful prison conditions, medical deliberate indifference, failure-to-protect, and failure-to-train. Specifically, Plaintiff alleges that (1) Quinn, Corrales, and Johnson inflicted cruel and unusual punishment by subjecting Plaintiff to deplorable protective custody conditions; (2) Quinn, Corrales, and Thomas acted deliberately indifferent to Plaintiff's medical needs; (3) Lee was deliberately indifferent to his safety; and (4) Thomas acted deliberately indifferent in failing to train or supervise Lee, and such failure led to Plaintiff's assault. *See* FAC at 14–19. The Court analyzes each claim in turn.

#### A.  Prison Conditions

To begin, Plaintiff brings allegations of unlawful prison conditions against Defendants Ronnie Quinn, Mario Corrales, and Captain Keisha Johnson. Under the Eighth Amendment, an allegation of unconstitutional prison conditions must satisfy an objective and subjective component. Under the objective prong, prison officials must generally "ensure that inmates receive adequate food, clothing, shelter, and medical care, and . . . take reasonable measures to

guarantee the safety of the inmates[.]'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation marks and citations omitted).  The law is abundantly clear, however, that "the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  Indeed, "routine discomfort is part of the penalty that criminal offenders pay for their offenses against society[.]" *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992) (citations and internal quotation marks omitted).  As for the subjective prong, "[w]hen the conduct in question involves any measure taken to prevent a security threat or restore official control, the Eighth Amendment inquiry is 'whether force was applied in a good faith effort to maintain or restore discipline or inflicted maliciously or sadistically for the very purpose of causing harm.'" *Sims v. Mashburn*, 25 F.3d 980, 984 (11th Cir. 1994) (quoting *Hudson,* 503 U.S. at 6).

With these standards in mind, the Court turns to and recounts Plaintiff's allegations as they are relevant here: After Plaintiff was "released from medical," he was escorted to Defendant Captain Johnson's office. FAC at 12. After their meeting, Johnson ordered that Plaintiff be placed in "protective custody." *Id.*  But, while Johnson "claimed he was putting [Plaintiff] in protective custody," Plaintiff claims that he "was put in disciplinary confinement with a mattress, blanket, pillow, and the clothes on [his] back." *Id.* at 15–16.  Plaintiff complained to a lieutenant that the officers of his dorm would not provide Plaintiff his required documents, property, bedding, or clothes. *See id.*  Despite his requests, Plaintiff "never received" these materials. *Id.*  Moreover, he insists that he was "not given even basic human necessities" like "soap, towel, sheets, change of clothes, [a] Bible, legal work," and "shower slides." *Id.*  He spent 22 days in protective custody "without a change of clothes" until his release.  He avers that Johnson's "deliberate indifference caused [him] anguish, pain, and suffering, and was cruel and unusual[.]" *Id.* at 16.  As for Defendants Warden Quinn and Assistant Warden Corrales, Plaintiff further alleges that they "were

actively involved in the grievance process."   FAC at 21.   Despite Plaintiff's "numerous grievances," he alleges that Quinn and Corrales inflicted "cruel and unusual" punishment by failing to cure "deplorable conditions," the "threat of violence" at his facility, and Plaintiff's "illegal housing . . . in a non-designated institution for the elderly." *Id.* at 14.  Quinn and Corrales purportedly "knew of the barbaric conditions of Plaintiff's housing," which Plaintiff explained to them during "ICT" (or "status of inmate") hearings. *Id.*

   Plaintiff does <u>not</u> allege that he was deprived of food, shelter, or medical care while in protective custody.  He plainly admits that he was placed in administrative segregation "with a mattress, blanket, pillow, and the clothes on [his] back." *Id.* at 15–16.  Notably, Plaintiff <u>also</u> concedes that, "[a]fter five days" in protective custody, he "was provided with four religious books, four canteen items, a folder of college lessons, soap, radio and headphones, [and an] address book." *Id.* at 24 (alterations added).  Thus, Plaintiff was deprived, at best, of a change of clothes, additional bed linens, and the opportunity to shower.  Federal district courts have determined— and the Court agrees—that these deprivations do not violate the Constitution.  *See White v. Marshall*, No. 08-cv-362, 2008 WL 4826283, at *3–4, 9 (M.D. Fla. Nov. 5, 2008) (finding no deprivation of "the minimal civilized measures of life's necessities" where prisoner was confined (a) for thirty days in a cell with only a drain in the floor for urinating, cold sandwiches three times a day, and no clothing except for a paper gown; (b) for twenty-four days without a mattress, blanket, wash basin, personal hygiene items, no lights, and no ventilation; (c) and was not permitted to shower or exercise for fourteen days); *Mosley v. Bishop*, No. Civ-07-0692, 2009 WL 1564778, at *1 (S.D. Ala. July 21, 2009) (holding that the denial of a mattress and bed linens for nine days, which forced an inmate to sleep on a "cold, raw steel slab," did not rise to the level of a deprivation of the minimal civilized measure of life's necessities or of a basic human need);

*Brown v. Goodman*, No. Civ-08-00694, 2010 WL 2202515, at *6 (S.D. Ala. April 19, 2010) (determining that a plaintiff's confinement in strip cell for eight days where the plaintiff had to sleep on the "hard iron bed frame a whole week" and "was very cold . . . every night" and day did not pose "an unreasonable risk of serious damage to his future health or safety" (cleaned up)).

Thus, "Plaintiff has not alleged any conditions showing that he has been denied the minimal civilized measures of life's necessities such as to violate the Eighth Amendment." *Johnson v. Florida*, No. 14-CV-132, 2016 WL 3014607, at *2 (N.D. Fla. Apr. 22, 2016) (cleaned up), *report and recommendation adopted*, 2016 WL 3014683 (N.D. Fla. May 24, 2016). In any event, even if Plaintiff could satisfy the objective component, Plaintiff still falls woefully short of showing that Defendants maliciously and sadistically placed him in administrative segregation for the purpose of causing harm. In fact, Plaintiff proffers <u>zero</u> facts to that end whatsoever. Accordingly, Plaintiff has not sufficiently pled an Eighth Amendment claim of unlawful prison conditions.

### B. *Medical Deliberate Indifference*

Next, Plaintiff alleges that Defendants Quinn, Corrales, and Thomas were deliberately indifferent to his medical needs. In the Eleventh Circuit, a plaintiff asserting an Eighth Amendment claim of deliberate indifference must satisfy two prongs. *First*, the plaintiff must show that "the deprivation he allegedly suffered was 'objectively, sufficiently serious,'" which requires him to establish an "objectively serious medical need." *Wade v. McDade*, 106 F.4th 1251, 1255–56 (11th Cir. 2024) (quoting *Farmer*, 511 U.S. at 834, 839). *Second*, the plaintiff must demonstrate that the defendant acted with "subjective recklessness as used in the criminal law," which means that "the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff[.]" *Id.* at 1262. But, a defendant "cannot be found liable . . . if he responded reasonably to the risk." *Id.* (cleaned up). A prisoner's complaint must

plausibly allege both prongs to "survive screening under [28 U.S.C. § 1915A]." *Ellard v. Middlebrooks*, No. 22-cv-241, 2023 WL 4686022, at *2 (N.D. Fla. June 26, 2023) (cleaned up), *report and recommendation adopted*, 2023 WL 4684911 (N.D. Fla. July 21, 2023).

## 1. <u>Defendant Tatiana Thomas</u>

Plaintiff avers that Sergeant Thomas denied Plaintiff necessary medical "treatment for his contusions and lacerations" on his head and face, and that her delay violated the Eighth Amendment. FAC at 18. After Plaintiff was attacked, Defendant Thomas "immediately began questioning him" while Plaintiff "was bleeding profusely from his head laceration." *Id.* at 11. Due to Thomas's alleged "disregard" of Plaintiff's "obvious injury," Plaintiff "was required to declare a medical emergency in order to be taken to medical for treatment." *Id.* He explains that Thomas then "escorted [him] to medical and left him in the care of a Nurse Fernandes," who treated his wounds. *Id.*

"[A]n inadvertent failure to provide adequate medical care 'cannot be said to constitute an unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976). However, "prison guards who intentionally deny or delay access to medical care or who intentionally interfere with the prescribed treatment [display deliberate indifference]." *Faulkner v. Monroe Cty. Sheriff's Dep't*, 523 F. App'x 696, 700 (11th Cir. 2013) (citing *Estelle*, 429 U.S. at 104-05); *see also McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) ("[A]n official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate."). Therefore, "the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." *McElligott*, 182 F.3d at 1255. For instance, the denial or delay of medical treatment lacking any medical justification is deliberate indifference. *See, e.g., Brown v.*

*Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990) ("[A]n unexplained delay of hours in treating a serious injury states a prima facie case of deliberate indifference." (listing cases)). Ultimately, when an inmate receives medical care, courts are sometimes reluctant to find a case of deliberate indifference. *See Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989).

Plaintiff complains that Defendants—presumably including Sergeant Thomas—have a "sordid and inexplicable past history of routinely denying inmates . . . medical care for serious medical needs[,]" which was "evident from the decision to delay treatment of the lacerations upon [his] head." FAC at 19. But, as the Court has explained, "[t]he tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay." *Harris v. Coweta Cnty.*, 21 F.3d 388, 393–94 (11th Cir. 1994). Here, for four reasons, Plaintiff's facts fail to demonstrate how Sergeant Thomas's actions or inactions created a medical emergency or amounted to a total disregard of Plaintiff's injuries. *One*, it is wholly unclear how long Thomas delayed (if at all) Plaintiff's access to medical care, as Plaintiff simply explains that Thomas was temporarily questioning Plaintiff on his encounter with Defendant Lee. *See* FAC at 18. *Two*, assuming Thomas was subjectively aware of Plaintiff's bleeding, Thomas <u>did</u> assist Plaintiff's transport to medical staff for treatment, so her conduct cannot plausibly amount to a denial of medical care. *Three*, even if Thomas did delay treatment of Plaintiff's lacerations, Plaintiff fails to explain <u>how</u> Thomas's inaction worsened his existing injuries or led to any additional injury to cause a medical emergency. *Fourth*, and ultimately, Thomas is evidently "not [a medical provider] and [is] not responsible for meeting the medical . . . needs of inmates." *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1399–1400 (11th Cir. 1994) (cleaned up). Thus, she cannot be liable for the deliberate indifference of any medical staff.

Overall, as to Sergeant Thomas, Plaintiff has not sufficiently alleged deliberate indifference in any delayed or denied medical treatment, or that the treatment he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (internal quotations and citations omitted).

## 2. <u>Defendants Ronnie Quinn and Mario Corrales</u>

Plaintiff alleges that Defendants Quinn and Corrales also denied Plaintiff necessary medical treatment for the "contusions and lacerations" on his head and face. FAC at 18. But his allegations against Quinn and Corrales are too conclusory and nonspecific to state a plausible claim of deliberate indifference to serious medical needs. *See Fulwood v. Fed. Bureau of Prisons*, 568 F. App'x 753, 756 (11th Cir. 2014) (recognizing that "conclusory, vague and general allegations" are insufficient in civil rights actions); *Ruiz v. Rummel*, 777 F. App'x 410, 415 (11th Cir. 2019) (finding that a prisoner-plaintiff's allegations that defendants' "conduct in disregarding his need for treatment was 'implicitly knowing and deliberate'" amounted to "naked, conclusory assertions" that did not state a plausible deliberate indifference claim). For instance, Plaintiff completely fails to plead whether Quinn and Corrales were subjectively aware of Plaintiff's serious medical symptoms and whether Defendants, in fact, disregarded those symptoms.

True, Plaintiff insists that he later filed grievances, and a prison official's subjective knowledge of a risk can be inferred where a prisoner filed a grievance that "provide[d] a sufficient basis to make the inferential leap that a substantial risk of serious harm to Plaintiff existed." *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). But Plaintiff advances <u>no</u> facts indicating how he described any serious medical symptoms or any unaddressed medical issues in his grievances to Defendants Quinn and Corrales. *See Jordan v. Whiting*, No. 23-CV-867, 2023 WL 4847586, at

*2 (M.D. Fla. July 27, 2023) ("[A]lthough Plaintiff acknowledges requesting care and filing grievances, he does not allege any of the symptoms he described in those requests or the type of medical care or treatment that he sought. Thus, he has not alleged that any defendant was subjectively aware of the seriousness of his infection or pain").  Plaintiff thus may not impute knowledge from any vaguely worded or generally tendered grievances.  *See Carter*, 352 F.3d at 1349.  Accordingly, Plaintiff has failed to state a claim of medical deliberate indifference against Quinn and Corrales.

### C. *Failure to Protect*

Moving on, the Court addresses Plaintiff's allegations against Defendant Lee.  When Plaintiff asked Lee, a trainee correctional officer, "to provide him with a canteen form to fill out," Lee "responded by ranting against [Plaintiff] for disturbing her."  FAC at 9.  Lee later confronted Plaintiff "for allegedly disrespecting her in the presence of 72 inmates."  *Id.*  Lee's "accusations of disrespect incited the inmates in the dorm to harbor anguish and animosity toward Plaintiff," including one inmate named Sylvester Bush, who allegedly attacked Plaintiff.  *Id.* at 15.  Plaintiff claims that Lee's "unprofessionalism," including her lack of "authority or training in which to supervise 140 inmates," was "cruel and deliberate" and "caused Plaintiff bodily harm."  *Id.*  He alleges that her "outspoken, inflammatory condemnation and accusations against Plaintiff . . . to other inmates within his open housing" caused "wanton infliction of pain" and constituted "deliberate indifference to his safety, security, and serious medical needs and elderly condition."  *Id.* at 17.

As a threshold matter, Plaintiff's central grievance is that Lee's verbal complaints supposedly incited an inmate to assault him.  But verbal harassment or abuse alone does not rise to the level of Cruel and Unusual Punishment.  *See Edwards v. Gilbert*, 867 F.2d 1271, 1274 n.1

(11th Cir. 1989); *Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008). That said, courts must construe *pro se* filings liberally to afford review on any "legally justifiable base." *Smith v. United States*, 420 F. App'x 944, 945–46 (11th Cir. 2011) (quotation omitted). Thus, the Court will liberally construe the allegation that Defendant Lee was deliberately indifferent to Plaintiff's safety and failed to protect him from inmate violence.

The Constitution requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832. It has been well established since *Farmer* that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. "[G]ratuitously allowing the beating . . . of one prisoner by another serves no legitimate penological objectiv[e]." *Id.* (cleaned up). While "isolated attacks by one prisoner or another may not constitute cruel and unusual punishment," an "excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm." *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016) ("[C]onfinement in a prison where violence and terror reign is actionable."). However, "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to . . . scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Even upon a liberal construction, Plaintiff still fails to state a plausible claim upon which relief can be granted for two reasons. *First*, Plaintiff does not allege that Lee actually and subjectively knew "of an excessive risk to [Plaintiff's] health or safety" prior to the attack. *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (alteration added; citing *Farmer*, 511 U.S. at 837). And "[t]he known risk of injury must be a 'strong likelihood, rather than a mere possibility' before a guard's failure to act can constitute deliberate indifference." *Brown*, 894 F.2d at 1537 (quotation omitted). Although Plaintiff explains that Lee was supposedly in charge of supervising over one hundred inmates, Plaintiff is required to show Lee "possessed <u>both</u>

knowledge of the danger and the means to cure it" to prove deliberate indifference. *Averhart v. Warden*, 590 F. App'x 873, 875 (11th Cir. 2014) (emphasis added); *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993). And Plaintiff otherwise puts forth no allegations of excessive inmate-on-inmate violence at his facility.

*Second*, assuming Lee perceived a threat from surrounding inmates, Plaintiff has not demonstrated how Lee consciously disregarded any such risk. For example, Plaintiff has not indicated how (if at all) Lee played a role, or exerted some form of control, in Plaintiff's attack, or gratuitously allowed it to occur in any way. While it is largely possible that Lee created a situation conducive for heightened animosity or resentment toward Plaintiff, "the whole of Plaintiff's allegations shows that [Lee complained] about him, which then inspired [an inmate] to attack Plaintiff on [his] own volition." *Lewis v. Waitts*, No. 24-CV-81305, 2024 WL 4678935, at *11 (S.D. Fla. Nov. 5, 2024) (cleaned up); *see also Brown*, 894 F.2d at 1537 ("Merely negligent failure to protect an inmate from attack does not justify liability under [42 U.S.C. §] 1983."); *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995) (recognizing that plaintiffs alleging failure-to-protect must show "obduracy and wantonness, not inadvertence or error in good faith" (citations omitted)). Thus, without more, Lee's conduct as pled does not constitute deliberate indifference to inmate safety.

### D. Failure to Train

As his last Eighth Amendment claim, Plaintiff alleges that Defendant Sergeant Thomas was "deliberately indifferent in [her] authority over the inmates in B dorm for abandoning [her] post" and leaving Defendant Lee "to supervise 140 inmates with no training or certification." FAC at 15. Plaintiff avers that Thomas's "failure to supervise" resulted in Plaintiff's assault. A supervisor can be held liable under § 1983 for failing to train his or her employees; however, this

is permissible "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (alteration added); *see also Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1397 (11th Cir. 1994) ("A supervisory official is not liable under [§] 1983 for an injury resulting from his failure to train subordinates unless his failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact and the failure has actually caused the injury of which the plaintiff complains." (internal quotation marks omitted)).

Thus, a plaintiff alleging a constitutional violation premised on a failure to train must demonstrate that the supervisor had "actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights," and that armed with that knowledge the supervisor chose to retain that training program. *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (alteration added). To establish that a supervisor was on actual or constructive notice of the deficiency of training, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary." *Id.* (internal citations omitted). Here, Plaintiff does not provide <u>specific</u> factual allegations showing any pattern of similar constitutional violations by <u>other</u> untrained employees under Defendant Thomas's supervision. And the FAC is devoid of any facts demonstrating "that constitutional violations were likely to recur without training." *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami, Fla.*, 637 F.3d 1178, 1189 (11th Cir. 2011). Therefore, Plaintiff has failed to state a claim against Thomas for failure to train or supervise.[1]

---

[1] To the extent Plaintiff asserts failure-to-train claims against any other Defendant, such as Defendants Quinn and Corrales, such claims are too conclusory to warrant judicial review and fail for the same reasons stated by the Court.

## II.  Plaintiff's Due Process Claims

The Court will now analyze Plaintiff's due process claims against Defendants Quinn, Corrales, and Johnson.  Upon a (substantially) liberal reading of Plaintiff's allegations, the Court will construe three subclaims.  According to Plaintiff, he was denied due process when (1) he was not afforded a hearing with proper fact-finding before being placed in administrative segregation; (2) he spent twenty-two days in protective custody under allegedly deplorable conditions of confinement; and (3) he attempted to file grievances with his institution.  *See* FAC at 21–26.  All three subclaims fail.

### A.  Disciplinary Hearing

To start, Plaintiff alleges that Johnson "deprived [him] of a liberty interest without any hearing [or] fact finding process" before placing him in protective custody.  FAC at 14 (cleaned up).  The Eleventh Circuit has held that due process "does not directly protect an inmate from changes in the conditions of his confinement" or create a constitutionally protected interest "in being confined to a general population cell, rather than the more austere and restrictive administrative segregation quarters."  *Chandler v. Baird*, 926 F.2d 1057, 1060 (11th Cir. 1991) (quoting *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)).  However, "a disciplinary proceeding, whose outcome will 'impose[] atypical and significant hardship on the inmate' must ensure the following due process rights: (1) advance written notice of the claimed violation, (2) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken, and (3) an opportunity to call witnesses and present documentary evidence in his defense."  *Asad v. Crosby*, 158 F. App'x 166, 173 (11th Cir. 2005) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974)).

As an initial matter, Plaintiff is wholly inconsistent on whether he was placed in <u>protective custody</u> or <u>disciplinary confinement</u>. *Compare, e.g.*, FAC at 14 ("While [Johnson] claim[ed] he was putting me in protective custody, I was put in disciplinary confinement with a mattress, blanket, pillow and the clothes on my back." (cleaned up)), *with id.* at 12–13 ("After twenty-two days in [protective custody], without a change of clothes, [Plaintiff] was released to [the] general population." (cleaned up)). Consequently, Plaintiff has failed "to allege any facts leading to the plausibility that his placement in administrative segregation was <u>punitive</u> in nature." *Mathis v. Georgia State Prison*, No. 15-CV-122, 2016 WL 183753, at *5 (S.D. Ga. Jan. 14, 2016) (emphasis added), *report and recommendation adopted*, 2016 WL 1562930 (S.D. Ga. Apr. 18, 2016).

In any event, Plaintiff's allegations also fail to show how his administrative segregation imposed an atypical and significant hardship sufficient to trigger due process considerations and warrant a hearing. For a prisoner to state a due process violation based on his placement in disciplinary segregation, he must show that "the State has consistently given a benefit to prisoners, usually through a statute or administrative policy," <u>and</u> that "the deprivation of that benefit 'impose[d] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Mathis*, 2016 WL 183753, at *5 (alteration added; quoting *Kirby v. Siegelman*, 195 F.3d 1285, 1290 (11th Cir. 1999)); *see also Sandin v. Conner*, 515 U.S. 472, 484 (1995).

*First*, Plaintiff fails to establish a protected, state-created liberty interest. Plaintiff refers to "FDC Rules and [R]egulations" and the Florida Administrative Code for the proposition that inmates in protective custody "are allowed the same conditions as general population inmates," such as the return of their personal property and other privileges. FAC at 24–25. However, "the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is <u>not</u> the language of the regulations regarding those conditions[.]" *Wilkinson v.*

*Austin*, 545 U.S. 209, 223 (2005) (emphasis added); *accord Mathews v. Moss*, 506 F. App'x 981, 984 (11th Cir. 2013) ("[M]andatory language in state statutes and prison regulations is insufficient to create a protected liberty interest." (citation omitted)); *cf. Sandin*, 515 U.S. at 482 ("[P]rison regulation[s] [are] primarily designed to guide correctional officials in the administration of a prison . . . [and] not . . . to confer rights on inmates." (cleaned up)).  Rather, the "touchstone of the inquiry" into the existence of a liberty interest is "the <u>nature</u> of those conditions themselves '<u>in relation to</u> the ordinary incidents of prison life.'"  *Wilkinson*, 545 U.S. at 223 (emphases added; quoting *Sandin*, 515 U.S. at 484).  And Plaintiff provides no other allegations comparing the ordinary conditions of the confinement of his fellow inmates to the conditions of his time in protective custody.

*Second*, courts have determined that conditions like Plaintiff's described confinement in protective custody would not trigger a liberty interest.  *See, e.g.*, *Mathews*, 506 F. App'x at 983 ("Being held in administrative confinement for short periods of 24 days and 18 days does not impose an atypical, significant deprivation sufficient to give rise to a constitutionally protected liberty interest." (internal quotation marks and citations omitted)); *Lloyd v. Briley*, No. 05-C-1499, 2007 WL 917385, at *7-8 (M.D. Ill. Mar. 23, 2007) (determining that prisoner confined to a strip cell without sheets, toilet paper, or personal property for thirteen days did not give rise to a procedural due process claim); *King v. Frank*, 328 F. Supp. 2d 940, 944 (W.D. Wis. July 27, 2004) (finding that a prisoner did not demonstrate "an atypical and significant hardship" where the prisoner was forced to wear a paper gown for forty days).  Plaintiff has <u>not</u> alleged, for instance, that he lacked "hot water," "ventilation," time to "exercise," or timely medical care while in protective custody that, conversely, would likely be sufficient to state a due process violation. *Wallace v. Hamrick*, 229 F. App'x 827, 830 (11th Cir. 2007).

For these reasons, Plaintiff fails to sufficiently allege a constitutional violation based on his placement in administrative segregation.  *See Abner v. Edwards*, 19-cv-00353, 2019 WL 5957279, at *2–3 (N.D. Ala. Oct. 16, 2019) (recommending dismissal of a due process claim at the screening stage where the prisoner-plaintiff failed to allege that his placement in punitive segregation would affect the duration of his sentence or impose atypical and significant hardship in relation to ordinary life), *report and recommendation adopted*, 2019 WL 5894406 (N.D. Ala. Nov. 12, 2019).

### B.   Conditions of Confinement

Plaintiff further alleges that Defendants Quinn and Corrales violated his due process rights by not remediating the "deplorable conditions" of his confinement and creating the "opportunity for Plaintiff's . . . assault."  FAC at 21 (cleaned up).  As the Court has explained, due process "does not directly protect an inmate from changes in the conditions of his confinement, as long as the condition to which the prisoner is subjected is not otherwise violative of the Constitution or outside the sentence imposed on him."  *Chandler*, 926 F.2d at 1060 (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976)).  The Court has already determined that the conditions placed on Plaintiff's time in protective custody were not unconstitutional, and his factual allegations underlying his due process claim appear duplicative of his already-failed deliberate indifference claims against Defendants Quinn and Corrales.  The Court will not address these claims further.

### C.   Grievances

Lastly, Plaintiff alleges that Defendants Quinn and Corrales deprived him of due process by not providing him documents necessary to file an administrative grievance and/or by not responding to his grievances.  *See, e.g.*, FAC at 24.  This subclaim is easily foreclosed by this Circuit's precedent, as the Eleventh Circuit has clearly stated that "an inmate has no

constitutionally protected liberty interest in access to [his prison's grievance] procedure." *Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011) (cleaned up).  If Plaintiff's allegations eventually proceed to service of process, and if Defendants assert the affirmative defense that Plaintiff failed to exhaust his administrative remedies, Plaintiff will be free at that time to argue that his institution's remedial process was made unavailable to him.  However, Plaintiff cannot state a due process violation on this basis.

## CONCLUSION

To summarize, Plaintiff has failed to state any cognizable claim for relief under the Eighth and Fourteenth Amendments related to his assault, medical needs, and the conditions of his administrative segregation.  Although Plaintiff has already filed an amended complaint, federal courts should freely grant a party leave to amend his pleading "when justice so requires"—particularly someone like Plaintiff, who is proceeding *pro se*.  FED. R. CIV. P. 15(a)(2).

For the foregoing reasons, then, it is hereby **ORDERED AND ADJUDGED** as follows:

1.      Consistent with the purpose of FED. R. CIV. P. 8, Plaintiff is granted leave to file a second amended complaint **not to exceed twenty (20) pages** in length.[2]  Moreover, the Court encourages Plaintiff to make every effort to keep his allegations within the four corners of the complaint form and to keep attached additional pages at a minimum to better adhere to the page limitations set by this Order.  **The second amended complaint must contain separate paragraphs dedicated to each individual Defendant explaining what that specific Defendant did and the supporting facts to show why that person or entity is being sued.**  The Clerk is

---

[2]  In the Northern District, Plaintiff moved for leave to file his complaint in excess of the page limitations imposed by the court.  *See* Motion for Leave to File, [ECF No. 6].  The Court is cognizant of Plaintiff's self-described medical issues but does not find that the reasons stated in the Motion justify filing a second amended complaint consisting of more than twenty pages.  Plaintiff is thus warned that the Court will strike all pages exceeding the 20-page limitation imposed herein.

further **INSTRUCTED** to provide Plaintiff with the Court's approved civil-rights complaint form entitled "Complaint for Violation of Civil Rights (Prisoner)."

2. On or before **May 9, 2025**, the second amended complaint must be docketed, signed under the penalty of perjury, and contain a short and plain statement of a claim for relief, a basis for federal jurisdiction, and a demand for judgment.  Plaintiff is reminded that the second amended complaint **must cure the deficiencies identified within this Order**; it must be completed on or substantially follow the Court's approved form, include a complete list of his prior litigation history, and provide all aliases by which he has been known.  The Court will only consider claims raised in the second amended complaint, and the second amended complaint will be the operative document for the remainder of this action.

3. The second amended complaint must be labeled "Second Amended Complaint" and—to ensure that it will be filed in this case—must include the following Case Number: **25-cv-21090-RAR**.

5. Plaintiff is warned that failure to file the second amended complaint on time and in compliance with this Court's Orders shall result in dismissal of this case for failure to prosecute or failure to comply with court orders.  *See* FED. R. CIV. P. 41(b).

6. The Clerk's Office is instructed to administratively **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 16th day of April, 2025.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

cc:   **SALVATORE J RAFFONE**
      079281
      UNION CI
      Inmate Mail/Parcels
      PO BOX 1000
      RAIFORD, FL 32083
      PRO SE